CITY OF SAN ANTONIO v. NEWNAM.
(No. 5918.)

(Court of Civil Appeals of Texas. San Antonio.
Jan. 23, 1918. On Rehearing,
Feb. 27, 1918.)

1. MUNICIPAL CORPORATIONS ☞155—MAYOR
—POWER TO DISCHARGE APPOINTEE.

Power given a mayor by charter to appoint to office carries with it power to discharge, subject to limitations in the charter.

2. MUNICIPAL CORPORATIONS ☞156 — DISCHARGE OF APPOINTEE—BELIEF OF UNFITNESS.

Under provision of charter that the mayor may, for any reason he may deem sufficient, discharge any appointee, provided that no one may be discharged for political reasons, if the mayor thinks the person incompetent and unfit, and for that reason discharges him, the discharge is legal, though he be fit and competent.

3. MUNICIPAL CORPORATIONS ☞156 — DISCHARGE OF APPOINTEE—BELIEF OF UNFITNESS—EVIDENCE.

Evidence that an appointee discharged by a mayor was competent and fit, and that there were political reasons which could have inclined him to desire the discharge, does not prove that the mayor believed him competent and fit, this rendering invalid the discharge made on the assigned ground of incompetency and unfitness.

4. MUNICIPAL CORPORATIONS ☞156 — DISCHARGE OF APPOINTEE—REASONS.

That a mayor has political reasons for which he might desire the discharge of an appointee, but which under the charter he cannot make for such reasons, does not prevent him making the discharge for another reason.

5. MUNICIPAL CORPORATIONS ☞165—ACTION AGAINST—NOTICE OF CLAIM.

A claim of a discharged city officer for salary on the ground of illegal discharge is not of the class of claims of which, under the charter, notice must be given as a condition precedent to right to sue.

6. PLEADING ☞376 — ADMITTED FACTS — PROOF.

Facts admitted by the pleadings of both parties need never be proved.

7. MUNICIPAL CORPORATIONS ☞162(5)—ILLEGAL DISCHARGE OF APPOINTEE—RIGHT TO SALARY—TENDER OF SERVICES.

For a city officer illegally discharged to recover salary, it is not necessary for him to tender his services.

8. APPEAL AND ERROR ☞204(1), 499(3)—REVIEW—INTRODUCTION OF EVIDENCE—OBJECTION AND BILL OF EXCEPTIONS.

That one may complain on appeal of introduction of improper evidence he must have objected to it at the time, and preserved the objection by bill of exceptions.

On Rehearing.

9. MUNICIPAL CORPORATIONS ☞185(9)—DISCHARGE OF OFFICER—REASONS—EVIDENCE.

Mere evidence that the mayor presided at a meeting, the object of which is not shown, at which a speaker said the name of city marshal was a stench in the nostrils of the people, and that he had appointed officers to intimidate voters, is inadmissible on the issue whether the mayor removed the marshal for political reasons, or because he considered him incompetent and unfit.

10. MUNICIPAL CORPORATIONS ☞185(9) — DISCHARGE OF APPOINTEE—REASONS—EVIDENCE.

That the mayor intended to discharge the marshal and that his political platform promised the discharge is inadmissible on the issue whether he discharged him because he deemed him incompetent and unfit or for political reasons.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Frank Newnam against the City of San Antonio. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

R. J. McMillan and Robt. G. Harris, both of San Antonio, for appellant. Leo Tarleton and A. L. Matlock, both of San Antonio, for appellee.

SWEARINGEN, J. This is a suit by Frank Newnam, appellee, against the city of San Antonio, appellant, to recover the salary of city marshal from the date of his discharge until the expiration of the term for which he had been originally appointed. His discharge is claimed to have been unlawful because the reason therefor was political. The jury, upon the one special issue submitted, found that appellee had been discharged for political reasons. The court rendered judgment in favor of appellee for the amount of salary claimed, viz. $1,555.55, together with 6 per cent. interest from the dates when each monthly salary was due. The amount was $1,927.86. Appellee alleged his appointment and qualification to the office of marshal of the city of San Antonio, the salary of which was fixed by the city at $2,000 a year, payable in monthly installments, and that the term was two years; that he served and received the salary from June 19, 1911, the date he received his commission, until August 19, 1912, when he was illegally discharged, since which date the city has refused to pay him the salary; that he was illegally discharged because the mayor discharged him for political reasons, which the city charter expressly forbade. Appellee further alleged that the mayor did not file his reasons in writing for appellee's discharge with the city clerk at the time of such discharge. Appellee also alleged that a majority of the city council in regular session did, by vote, approve his discharge. Answering the cause alleged, appellant made the issue that appellee had been legally discharged at the time alleged, for which reason the city owed nothing to the appellee. The evidence disclosed that appellee had been regularly appointed; that he had qualified and had received his commission to the office of marshal of the appellant city, and that he had served from June 19, 1911, until August 19, 1912. On the latter date A. H. Jones became the mayor of the city, and within a few minutes thereafter announced to the council in session that he discharged appellee from the office of city marshal. The council, by a majority vote, sustained the action of the mayor discharging the appellee. On the same day, the mayor filed with the city clerk the following letter:

"San Antonio, Texas, August 19, 1912.

"Mr. Fred Fries, City Clerk, City of San Antonio, Texas—Dear Sir: I have to-day discharged from the service of the city Frank M. Newnam, city marshal, for the following reasons, to wit: The said Frank M. Newnam, by his conduct in said office of city marshal, has demonstrated his incompetency and general unfitness to perform the duties thereof. Please file these reasons for his discharge as required by the city charter.

"Yours truly,         A. H. Jones."

It was proven that appellee was paid in full up to the date of his discharge, but was not paid anything after the latter date. There was evidence that appellee was a competent and fit person to perform the duties of city marshal. It was proven that Mayor Jones was supported in his race for mayor by a political party denominated the "Citizens League," and that the first plank in that party's platform was a promise to discharge appellee. This plank in the platform was an issue in the campaign. Appellee opposed the candidate of the Citizens League and supported the defeated candidate.

[1] The controlling question in this case for our consideration is the legality of the discharge. The charter vested in the mayor the power to make the appointment with the consent of the city council. That the power to appoint carries with it the power to discharge is settled. Keenan v. Perry, 24 Tex. 253; Ex parte Hennen, 13 Pet. 230, 10 L. Ed. 136; Parsons v. U. S., 167 U. S. 324, 17 Sup. Ct. 880, 42 L. Ed. 185. This power of the mayor to discharge his appointees was, however, not left entirely to the peremptory or arbitrary will of the mayor; but the power was expressly limited by section 17 of the charter:

"Section 17. Any appointive officer, employé, agent or servant of the city, employed under authority of the council, may be discharged from service by the mayor for any reason he may deem sufficient, and such appointive officers, employés, agents and servants, unless so dismissed and discharged, or unless their offices and employments are abolished by the council, shall hold their offices until the next general city election and until their successors, if any, shall be appointed and qualified; provided that no person shall be dismissed or discharged for political reasons; and provided that in case of discharge of any appointive officer by the mayor, the mayor shall file his reasons in writing for such discharge with the city clerk at the time of such discharge, and such reasons shall be open for public inspection, and such discharge shall be approved by a majority of the city council; and provided, further, that the city council may, independent of the above power of discharge given the mayor, also provide by ordinance, for the suspension or removal, by two-thirds vote of the entire council, of any appointive officer, employé, agent or servant of the city employed under authority of the council, for incompetency, official misconduct or habitual drunkenness and provide for the temporary suspension of such officer, employé, agent or servant during the pendency of charges against him."

The limitation, apparent from the foregoing, is that the mayor cannot discharge for political reasons; he cannot discharge without the concurrence of a majority of the city council; and the mayor is required to file, at the time of the discharge, with the city clerk, his written reasons for the discharge, the reasons to be open for public inspection.

[2] The conclusion, belief, or opinion of Mayor Jones that appellee was unfit or incompetent to perform the duties of marshal empowered the mayor to discharge the appellee, provided the discharge was approved by a majority of the council and the written reasons were filed. In the instant case, the discharge was approved by a majority of the council, and the written reasons were filed with the clerk, so it will be unnecessary to consider these two requirements further.

[3] The question is therefore narrowed to this: Did Mayor Jones deem the appellee incompetent or unfit to be the marshal? If the mayor believed appellee to be competent and fit for the duties of the office of marshal, then the written reasons for the discharge were not filed with the clerk, and the procedure required by the charter was not complied with, for incompetency and unfitness are the only reasons given in the filed letter.

Does the evidence prove that Mayor Jones believed appellee competent and fit? Before discussing the evidence, we again emphasize that it is Mayor Jones' opinion of appellee's competency and fitness; and not the fact of competency and fitness. The proof or admission that appellee was actually competent and fit for the position is not the test of whether the mayor had the power to discharge. The test is: Did the mayor deem appellee incompetent and unfit? If the mayor deemed appellee incompetent and unfit, even though the mayor was in error, the power vested in him to discharge. Were this not the proper construction of the charter provision, section 17 must be understood to mean that the mayor could not discharge an appointee unless the appointee was in fact incompetent and unfit, and, further, that this fact must be determined in a court of competent jurisdiction after a fair trial. There is no such limitation in the charter.

Then, what is the testimony in the record to prove that Mayor Jones believed appellee to be a competent and fit person to perform the duties of city marshal? There is the testimony of appellee and his witnesses, Richter, Kinney, Lucas, and others, that each of them believed appellee competent and fit, which tends to establish the fact that appellee was in fact competent and fit; but this testimony does not tend to prove that Mayor Jones believed appellee competent and fit, for, as before stated, the mayor may have had an entirely erroneous estimate of appellee's real ability and merit. Yet the mayor's opinion, though wrong, was the fact essential for the exercise of the power to discharge.

Examining the testimony further, we find that the mayor and appellee were arrayed against each other, belonging to opposing political factions; one faction seeking the election of Mayor Jones and the other seek-

ing his defeat. The discharge of appellee was promised by Jones while a candidate, and was effected as his first official act. This testimony indicates that there were political reasons that would make Mayor Jones desire to discharge appellee, but the testimony falls far short of proving that Mayor Jones believed appellee was competent and fit for the office of city marshal. The more reasonable deduction would be that Mayor Jones deemed appellee incompetent and unfit, and therefore determined to discharge him; and because of this opinion of appellee by Mr. Jones appellee opposed Jones for mayor.

To repeat, the testimony is sufficient to sustain a finding by a jury of two facts, viz.: First. That appellee was in fact a competent and fit person to perform the duties of city marshal; second, that the mayor actually had political reasons that could have inclined him to desire the discharge of appellee. Neither of these two facts, singly nor jointly, proves the issue in this suit that must be established by appellee, viz. that Mayor Jones deemed appellee a competent and fit person for the office of city marshal. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059. The only evidence of the mayor's opinion is that shown by his letter filed with the city clerk.

It may be said that it is difficult to prove in any case that a discharge is made by a mayor solely because of political reasons, which, proven, renders the discharge ineffective; and because of the difficulty of proof, for all practical purposes, destroys the limitation expressed in the charter. The difficulty of proof, and also the consequent ineffectiveness of the limitation, are indeed obvious. But, on the other hand, the mayor had the power to discharge appointees as an incident to the power of appointment given him by the charter as before stated. This summary power was not intended to be destroyed by section 17 of the city charter, for the opening sentences of that section expressly state that the mayor shall discharge appointive officers for any reason he may deem sufficient. If the fact proven in this case, that appellee was in fact competent, could render the discharge illegal even though Mayor Jones deemed him incompetent, the mayor has no summary power of discharge, but can only discharge for actual unfitness and incompetency, which the mayor could not determine, but must be determined by a court of competent jurisdiction. The only reasonable construction of the language of section 17 of the city charter is that it is the mayor's opinion, right or wrong, that authorized the discharge.

[4] Then again, to hold that because political reasons sufficient to cause the mayor to desire the discharge are proven is sufficient to annul the summary power of discharge would be unreasonable, for the political reasons may have been caused by the mayor's opinion that appellee was unfit for the office; or it may be that the mayor, besides the political reasons, had the additional reason that he deemed appellee unfit. It cannot be seriously contended that, because the mayor had political reasons for which he might desire to discharge appellee, therefore the mayor cannot discharge for another reason. Such a contention would mean that a mayor could never discharge a political opponent, no matter how utterly inefficient and incompetent and unfit he might be either in the opinion of the mayor or in fact. The charter says the mayor can discharge for any reason he may deem fit, provided that reason is not a political reason. The only reasonable construction is that the mayor cannot discharge an appointee when the mayor's sole and only reason is political.

The jury in this case has in effect found that Mayor Jones believed that appellee was a competent and fit person to perform the duties of the office of city marshal. There is no evidence to sustain that finding.

Our conclusions above expressed dispose of the propositions presented under the sixth, eighth, ninth, tenth, eleventh, and thirteenth assignments, which are all sustained.

[5] The seventh assignment, claiming that there was error in that appellee gave no notice of his claim as required by section 46 of the city charter as a condition precedent to the right to file the suit, is overruled, for the reason that claims of the character herein sued for are not the character of claims referred to by that section of the charter. City of Houston v. Isaacks, 68 Tex. 116, 3 S. W. 693.

[6] The first assignment, complaining that there was no proof of the legal existence of the office and salary, is overruled, because these facts were admitted, and it is never necessary to prove facts admitted by the pleadings of both parties.

[7] The second assignment is overruled because it was not necessary under the facts of this case for appellee to tender his services in order to recover, if he was illegally discharged. City of Paris v. Cabiness, 44 Tex. Civ. App. 587, 98 S. W. 927.

Because the evidence shows that appellee was legally discharged, the third and fourth assignments are sustained.

The fifth and ninth assignments are overruled. If the mayor had discharged appellee for political reasons, the discharge would have been illegal, and the city would have been liable for the salary.

[8] The twelfth assignment is overruled because appellant should have objected to the introduction of improper testimony when offered. No bill of exception can be found in the record showing such objections by appellant. The records collated in the twelfth assignment show that after all the objectionable testimony was introduced without objection, then for the first time appellant

moved for a new trial, which was refused, but the court, upon its own motion, instructed the jury not to consider certain testimony. The drift of the evidence thus excluded went to prove that Mr. Jones, afterwards mayor, believed appellee was unfit for the office of city marshal. Why appellant did not object to it at the time it was offered is readily enough understood, but why appellant moved for a new trial because of it is not clear to us.

Because there is no evidence that Mayor Jones believed appellee a competent and fit person for the office of city marshal, appellee failed to establish his cause of action, which is that his discharge was illegal. Therefore the judgment is reversed, and the cause remanded.

### On Rehearing.

[9] Appellee insists that we rule upon his three cross-assignments. The first cross-assignment is:

"The court erred in excluding the following testimony from the jury: Frank Newnam testified that 'Mr. Jones was chairman of the Citizens' League, and called an indignation meeting in his name at the Bethoven Hall and was chairman of the meeting; that witness was there and heard the speaking. Jones called the meeting and was chairman of the meeting and on the platform. The speaker, Mr. Webb, said my name was a stench in the nostrils of the people; that I had these policemen appointed and did it to intimidate voters. I had not appointed any policemen in my life.'"

Viewed in the light of the record before us, the trial court correctly excluded this testimony, for the object of the meeting does not appear. The statement itself was made by Mr. Webb, not by Mr. Jones. The evidence does not show that Mr. Jones authorized, ratified, or even approved the statement. We overrule the first cross-assignment.

[10] The second cross-assignment is:

"The court erred in sustaining the objections of the defendant to the following testimony: Plaintiff offered to prove by Louis Dennet, a reporter of the San Antonio Light, that he had a conversation with A. H. Jones on August 9, 1912, in which said Jones said the platform and issue on which he was elected demands that Frank Newnam and Fritz Russi be discharged from the city's employ. 'Just how we are going about this I can't say at present, but it shall be done.'"

This testimony could prove nothing more than that Mr. Jones intended to discharge Mr. Newnam, and that Mr. Jones' political platform made the promise to discharge him. This testimony does not tend to show whether or not Mr. Jones deemed Mr. Newnam competent and fit for the position, which was the only issue to which it could be relevant. The ruling of the court presents no reversible error. The second cross-assignment is overruled.

The third cross-assignment presents a question similar to the second cross-assignment, and for the reasons last discussed is overruled.

---

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes